**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
Case No. _____
*Electronically Filed*

| | |
|---|---|
| **CHRISTOPHER FREEMAN** ) | **CIVIL ACTION NO. 5:22-cv-57-TBR** |
| 106 E. 14th Street ) | |
| Benton, Kentucky 42025 ) | |
| ) | |
| **Plaintiff** ) | |
| vs. ) | **SENIOR JUDGE THOMAS B. RUSSELL** |
| ) | |
| **MARSHALL COUNTY** ) | **COMPLAINT WITH JURY DEMAND** |
| ) | |
| Serve: Judge/Executive Kevin Neal ) | |
| 1101 Main Street ) | |
| Benton, KY 42025 ) | |
| ) | |
| and ) | |
| ) | |
| **EDDIE MCGUIRE,** ) | |
| **Both in his Official Capacity as Sheriff** ) | |
| **and in his Individual Capacity** ) | |
| 1026 Starks Cemetery Road ) | |
| Hardin, Kentucky  42028 ) | |
| ) | |
| and ) | |
| ) | |
| **KEVIN SPRAGGS,** ) | |
| **Both in his Official Capacity as** ) | |
| **Commissioner and in his** ) | |
| **Individual Capacity** ) | |
| 2005 Phelps Road ) | |
| Benton, Kentucky 42025 ) | |
| ) | |
| and ) | |
| ) | |
| **BRIAN ANDRUS,** ) | |
| **Both in his Official Capacity as** ) | |
| **Fire Chief and in his Individual Capacity** ) | |
| 1483 Slickback Road ) | |
| Benton, Kentucky 42025 ) | |
| ) | |
| and ) | |
| ) | |

1

| | |
|---|---|
| **UNKNOWN DEFENDANTS** | ) |
| **Names and addresses unknown** | ) |
| | ) |
| **Defendants** | ) |

# COMPLAINT AND JURY DEMAND

Come now the Plaintiff, Christopher Freeman, by and through counsel, and for his Complaint against Defendants, states as follows:

## PARTIES AND JURISDICTION

1. At all times relevant hereto, Plaintiff Christopher Freeman was a resident and citizen of Marshall County, Kentucky.

2. At all times relevant hereto, Defendant Marshall County ("County") operates as a political subdivision of the Commonwealth of Kentucky under all relevant statutes, and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, and KRS §344, et seq.

3. At all times relevant hereto, Defendant Commissioner Kevin Spraggs was a resident and citizen of Kentucky.

4. At all times relevant hereto, Defendant Sheriff Eddie McGuire was a resident and citizen of Kentucky.

5. At all times relevant hereto, Defendant Fire Chief Brian Andrus was a resident and citizen of Kentucky.

6. Through information and belief, Unknown Defendants have participated in the actions giving rise to Plaintiff's causes of action.

7. Plaintiff is employed by Defendant in Marshall County, Kentucky, and the employment practices complained of herein all occurred in Marshall County, Kentucky.

8. Subject matter jurisdiction exists in this Court under 42 U.S.C. §2000, 28 U.S.C §1331, and 28 USC §1367 and other applicable laws.

9. This Complaint has been filed within the statute of limitations period established for the claims arising herein.

10. Original jurisdiction is appropriate in this Court based upon subject matter jurisdiction.

11. Venue in the Western District of Kentucky is appropriate pursuant to 28 U.S.C. §1391 in that a substantial part of the events giving rise to the claim occurred within this district.

## ADMINISTRATIVE REQUIREMENTS

12. Within 300 days of the conduct set forth below, Plaintiff filed a charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission, Charge No. 474-2021-00580 against Marshall County alleging discrimination on the basis of his disability and retaliation for his reports of disability discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

13. On or about February 24, 2022, the EEOC issued Plaintiff a Right to Sue letter (See attached).

14. Plaintiff received his Right to Sue in accordance with 42 U.S.C. §2000e5(f)(1).

15. Plaintiff has filed the instant action within 90 days of receipt of the Right to Sue.

16. Plaintiff has exhausted his administrative requirements pursuant to 29 C.F.R. §1614.407(b).

## FACTS RELEVANT TO ALL CLAIMS

17. Plaintiff was hired by County as 911 Director on or around May 6, 2019, in order to run the 911 Dispatch Center ("911") and to oversee the project to build a regional 911 dispatch center in Marshall County.

18. During his employment, Plaintiff has been subjected to a continuing pattern of discrimination and harassment based on his disability of a hearing impairment. The discriminatory conduct against Plaintiff began at Defendant County even prior to his employment, when an anonymous letter was sent to members of the Fiscal Court, including the individual Commissioners, by someone working for Defendant County, stating that Plaintiff was "unfit for duty" due to his hearing disability. Since the contents of the letter almost precisely mirrored the discriminatory statements Defendant Commissioner Spraggs made to Plaintiff, it is clear that Defendant Spraggs and the County instigated or, at the very least, engaged in the sending of the "anonymous" letter.

19. As of the general pattern of discrimination and harassment during his employment with Defendant County, on or around July 18, 2019, Plaintiff was subjected to discriminatory comments regarding his hearing disability by Defendant Commissioner Spraggs, including but not limited to, Defendant Commissioner Spraggs telling Plaintiff that he, Spraggs, believed that Petitioner was unable to do his job, being in deaf in one ear. Following the incident, Plaintiff reported the incident to his direct supervisor, Kevin Neal.

20. Plaintiff complained repeatedly about the continuing hostile working environment that he endured with Defendant County based on the illegal and discriminatory conduct and comments regarding Plaintiff's hearing disability. On or around August 19, 2019, Plaintiff filed a written complaint in accordance with Section 5.45 of the Administrative Code with Defendant

County that was delivered to the Marshall County Fiscal Court, and directly to Defendant Commissioner Spraggs, about his disability discrimination-related concerns.

21.     Defendant County failed to provide a written response to Plaintiff's complaint of disability discrimination, nor did they follow the complaint or grievance procedures required under Section 5.45 of the County's Administrative Code.

22.     As a result of his complaints of disability discrimination, Plaintiff was subjected to retaliation by Defendant County and Defendant Commissioner Spraggs. Most specifically, following his complaints, Defendant Commissioner Spraggs, on behalf of himself and Defendant County, has taken numerous direct retaliatory actions against Plaintiff.  Defendant Commissioner Spraggs has, in fact, specifically targeted Plaintiff to criticize, disparage, and demean his person, his position, his work for Defendant County, and his ability to do his job for the County, including his ability to manage his budget and his employees. Defendant Commissioner Spraggs has used his position with the County to take numerous direct retaliatory actions against Plaintiff in his job, including but not limited to, verbally denouncing the need for Plaintiff's position to continue with the County, and specifically voting "no" on any funding bill for a new 911 regional dispatch center, which resultingly prevents Plaintiff from performing the primary job he was hired to perform. Defendant Commissioner Spraggs also consistently denied any other funding for Plaintiff's department, personally attacked Plaintiff's job qualifications, publicly criticized Plaintiff and his staff, and publicly instigated and supported efforts to remove Plaintiff from his employment.

23.     In or around February 17, 2020, it was reported to Plaintiff as the 911 Director that one of his employees had been sexually harassed by a Sheriff's Deputy while on duty.

24. Plaintiff, as 911 Director, reported the sexual harassment incident to the Human Resources Department of Defendant County and to Defendant Sheriff McGuire.

25. As a result of his reporting of an employee's sexual harassment complaint, Plaintiff was subjected to retaliation by Defendant Sheriff McGuire. In direct response to Plaintiff's reporting of one of his employee's complaint of sexual harassment by a Sheriff's deputy, Defendant Sheriff McGuire himself, and by and through actions of others he directed, has taken numerous retaliatory actions against Plaintiff, including but not limited to: disparaging his employee, the victim of sexual harassment, interrogating her for multiple hours during her work shift without informing Plaintiff, her supervisor. Defendant Sheriff McGuire himself, and by and through others he directed, and with the support of other County officials, also repeatedly harassed and disparaged the work of Plaintiff and interfered with the work of all other employees of the 911 Call Center, including but not limited to placing a black garbage bag on the door from the 911 Call Center, which leads to the shared common area, in a successful effort to prevent 911 employees from accessing that area. In addition, Defendant Sheriff McGuire himself, and by directing others, and with the support of other County officials, disseminated false and defamatory narratives to the media to portray Plaintiff in a negative light.

26. Following his complaint of sexual harassment and disability discrimination, Defendant County, Defendant Sheriff McGuire, and Defendant Commissioner Spraggs began colluding with each other to retaliate against Plaintiff. These acts of retaliation and direct hostility toward Plaintiff were openly discussed at meetings among County officials. Defendant Commissioner Spraggs and Defendant Sheriff McGuire, with the assistance of other County officials, demanding in such meetings that others assist in undermining Plaintiff's position with the County.

27. In or around August 2020, Defendant Sheriff McGuire, Defendant Commissioner Spraggs, and Defendant Fire Chief Andrus, spearheaded a conspiracy to attempt to oust Plaintiff from his job from the County during a Fire Chief's Meeting. Specifically, they, including Commissioner Monti Collins, enumerated their conspiracy to oust Plaintiff from his job, demanding that these other City and County employees join their plot so that Plaintiff be made to "take his beating" and be fired. In order to accomplish this conspiracy, they urged those present to assist in convincing County Commissioner Lamb to "side with them" in pushing Plaintiff out; to help enlist the media to stir up community animosity towards Plaintiff, especially by using the "radio communications" to make it relatable to the public; to lock up all spending on the new "911 Center" to stop construction; and to remove Plaintiff from the Judge/Executive's supervision and establish a new Board over "911" that would then promptly terminate Plaintiff from his job. Directly after this meeting, Commissioner Collins stated to Plaintiff, "you can't beat a Sheriff's PR campaign". The radio communications narrative against Plaintiff has persisted for more than two years.

28. Plaintiff has complained about the ongoing retaliation on multiple occasions during his employment with Defendant County, including to the Judge/Executive, Deputy Judge/Executive, the Fiscal Court, County Attorney Jason Darnell, Human Resources, to Defendant Commissioner Spraggs and to Defendant Sheriff McGuire. As a result of these complaints, Petitioner was subjected to additional retaliation, including but not limited to Defendants' stirring up community animosity towards Plaintiff and "locking up" spending on the new 911 Center, so as to prevent Plaintiff from succeeding in his job.

29. On or around August 27, 2020, Plaintiff filed a formal complaint with the Deputy Judge/Executive regarding the harassment, hostile work environment, and retaliation he was

receiving at his employment with Defendant County, and asking for protection and relief for himself, as well as his 911 staff.

30. Following his formal complaint, Defendant Commissioner Spraggs, on behalf of the County, Defendant Fire Chief Andrus, and Defendant Sheriff McGuire continued to retaliate against Plaintiff, including but not limited to, circulating a petition of no-confidence in Plaintiff, asking other counties to not join the regional Marshall County 911 center in a published article, and holding a rally to incite the community against Plaintiff.

31. On several occasions following Plaintiff's complaints, Defendant Commissioner Spraggs also began to vote against paying for invoices for work done or materials procured for the 911 center, despite such invoices having been previously approved. Specifically, on September 8, 2020, Defendant Commissioner Spraggs stated that he would not approve any future bills related to the construction of the Regional 911 Call Center.

32. Following Defendant Commissioner Spraggs' denial of payment's related to the 911 Call Center, Defendant Commissioner Spraggs further retaliated against Plaintiff by defaming Plaintiff, using media outlets to falsely accuse Plaintiff of "obscene" spending and non-compliance with procurement processes, for monies Defendant Commissioner Spraggs and the Fiscal Court, themselves, allocated, and the County Treasurer issued approved purchase orders for.

33. Defendant Andrus continued to retaliate against Plaintiff, including but not limited to, using his official capacity to intimidate Plaintiff by blocking the road with his official vehicle, flashing his lights, and forcing Plaintiff to speak with him outside of Plaintiff's house while Defendant Fire Chief Andrus sat in his vehicle. Additionally, Defendant Fire Chief Andrus

8

further retaliated spreading disparaging, false, and/or misleading statements regarding Plaintiff on social media.

34. In or around October 13, 2020, Plaintiff filed a complaint against Defendant Fire Chief Andrus with the Kentucky State Police, over unethical behavior toward Plaintiff and his 911 staff.

35. On or around February 4, 2021, following an article from the WPSD regarding a denied open records request to Defendant Sheriff McGuire, Marshall County Judge/Executive requested the County's radio assets and programming vendor from Defendant Sheriff McGuire, which he refused to provide. In direct retaliation, Defendant Sheriff McGuire sent an Open Records Request for all emails between Plaintiff's, Judge Neal, and Plaintiff's vendor. In response to this request, County Attorney Jason Darnell denied Defendant Sheriff McGuire's request, through no fault of Plaintiffs. At this time, Defendant Commissioner Spraggs used this to further publicly defame and falsely portray Plaintiff, blaming Plaintiff for the denied request, and further defaming Plaintiff for alleged spending which the Fiscal Court previously approved, and which is standard in 911 centers.

36. On or around February 8, 2021, following a request by Plaintiff to hold an informational meeting concerning the spending at the 911 center with members of the Fiscal Court, County Attorney Jason Darnall contacted Plaintiff regarding concerns with a quorum of the Fiscal Court being present at the meeting. At this time, Plaintiff complained about a quorum being present at the rally concerning the petition of no-confidence against Plaintiff, with no issues from County Attorney Darnall objecting.

37. On or about February 9, 2021, Defendant Commissioner Spraggs and Defendant Sheriff McGuire made additional false and inflammatory statements to media about the 24/7

intensive use chairs and the icemaker for the 911 center, which were both previously approved by the Fiscal Court.

38. On or around June 9, 2021, Defendant Commissioner Spraggs made a retaliatory motion to deny paying for 24/7 intensive use chairs that Plaintiff had followed the proper procurement processes to obtain. By Statute the county can only deny an illegal or unjust bill. Furthermore, in a meeting with Judge Executive Kevin Neal, Plaintiff and Commissioner Justin Lamb, Commissioner Lamb directed Plaintiff to reduce the number of 24/7 intensive use chairs purchased from 9 chairs to 7 chairs and he would support the purchase. Plaintiff followed the directive. Despite this, the motion was granted and Commissioner Lamb had been convinced to side with Defendant Spraggs and Commissioner Collins, voting not to pay the invoice for the already purchased and delivered chairs. On several occasions, Judge Executive Kevin Neal publicly stated in Fiscal Court meetings that no other department head is unfairly treated the way Plaintiff is, and no other employees invoices have ever been denied, even when, unlike Plaintiffs, their purchases have not been procured properly by law. Despite this, the motion was granted. Defendant Commissioner Spraggs used this to further defame and retaliate against Plaintiff in the local media.

39. On or around July 6, 2021, Defendant Commissioner Spraggs, in an effort to further retaliate against Plaintiff, made a motion to not pay yet another vendor that Items were properly procured from.

40. From in or around July 6, 2021, to July 20, 2021, Defendant Commissioner Spraggs and Defendant Sheriff McGuire used the news media, and social media, to post inflammatory statements to incite the public over the false narrative of excessive spending for 911, despite 911 being $250,000 under budget in 2021.

41. In or around July 20, 2021, Plaintiff read a formal statement to the Fiscal Court outlining the ongoing illegal work environment and continued retaliation he, and his employees, have been subjected to since his complaints of disability discrimination and sexual harassment, stating that it is preventing him from completing his job duties. Immediately following Plaintiff's statement, Defendant Commissioner Spraggs made a retaliatory motion to have the County Attorney draft an ordinance to place Plaintiff's employment under the supervision of a board so they can fire him and manage his spending. Plaintiff was directly advised that County Attorney Jason Darnall was working with Defendant Fire Chief Andrus to draft this ordinance for a Board and the intent of the Board was to fire Plaintiff, as the initial August 2020 conspiracy meeting had planned.

42. Plaintiff complained on multiple occasions to Defendant County about a pattern of disparaging, crude, and offensive sexually charged "memes" being posted online about Plaintiff on the County's social media page. Defendant County failed to provide any remedial measures, as required by Section 5.48 of the County Administrative Code.

43. In or around September 22, 2021, Plaintiff filed his EEOC Charge against Defendant County.

44. On or around November 5, 2021, due to the severe emotional distress Plaintiff suffered due to the constant retaliation and harassment of Plaintiff by Defendants, Plaintiff was forced to take leave due to a medical condition.

45. Following Plaintiff's filing of his EEOC complaint, and in direct retaliation for the same, as well as for his prior complaints and for the use of his medical leave, all Defendants continued their pattern of direct retaliation against Plaintiff. Defendant County even retaliated by disseminating Plaintiff's private health information to the community at-large and exhausting

Plaintiff's vacation time, despite a request to use his compensatory time, instead of allowing him to use his previously approved compensatory time.

46. Plaintiff complained to Defendant County, regarding the discriminatory and retaliatory use of his vacation time. To date, Defendant County has refused to take remedial action.

47. Following Plaintiff's return from medical leave on or around February 21, 2022, all Defendants have continued their pattern of retaliation and career assassination, including but not limited to, spreading false and malicious statements to the community as a part of their respective campaigns for public office.

48. To date, all Defendants have continued their pattern of discrimination, harassment, and the circulation of false and misleading narratives, including but not limited to, heavily focusing on Defendant Sheriff McGuire, Defendant Fire Chief Andrus and other First Responders radio communication issues that pre-dated Plaintiff's employment, in order in order to further their ongoing efforts to retaliate against Plaintiff and have made Plaintiff the target of their political campaigns.

49. To date, Defendant County has refused to take remedial action to protect Plaintiff despite his numerous complaints, insisting that there is nothing they can do to protect Plaintiff from the ongoing and continuing discriminatory and retaliatory work environment.

50. The aforementioned spending and personnel matters are typically handled internally by the Fiscal Court. However, Defendants have allowed these matters to be played out in the public, in an effort to retaliate and publicly defame Plaintiff.

51. As a direct result of Defendant's acts or failures to act stated herein, Plaintiff has suffered and continues to suffer irreparable harm, including but not limited to pain and suffering, emotional distress, and mental anxiety for which he is entitled to compensation.

52. Through information and belief, Unknown Defendants have participated in the actions giving rise to Plaintiff's causes of action. Plaintiff reserves the right to amend this Complaint during the course of discovery.

## COUNT I
## DISABILITY DISCRIMINATION
**(Defendant Marshall County)**

53. Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

54. The actions described herein created a hostile and discriminatory work environment based on Plaintiff's disabilities, in violation of Title VII of the Civil Rights Act of 1964, as amended, and KRS § 344, et seq.

55. As a direct and proximate result of Plaintiff's conduct described herein, Plaintiff has suffered mental and emotional distress, for which he should receive compensatory and punitive damages as well as his reasonable attorney fees and costs.

## COUNT II
## RETALIATION (TITLE VII & KRS 344)
**(Defendant Marshall County)**

56. Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

57. Once Plaintiff complained of the illegal hostile work environment regarding both disability discrimination and sexual harassment, Defendant Marshall County took numerous retaliatory acts against Plaintiff.

58. As a direct and proximate result of Defendant's conduct herein, Plaintiff has suffered a loss of income and benefits, severe emotional distress and mental anxiety, all for which he should be compensated.

### COUNT III
### TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
**(Defendant Sheriff McGuire, Defendant Commissioner Spraggs, Defendant Fire Chief Andrus & Unknown Defendants)**

59. Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

60. Plaintiff had a valid business relationship or expectancy with County.

61. Defendants Sheriff McGuire, Defendant Commissioner Spraggs, Defendant Fire Chief Andrus, and Unknown Defendants knew that Plaintiff had a valid business relationship or expectancy with County.

62. Defendants intentionally and improperly interfered with the business relationship between Plaintiff and County when they have continually retaliated against Plaintiff and attempted to ouster Plaintiff from his job with County.

63. Defendants' actions rise to the level of gross negligence and/or intentional and/or wanton or reckless behavior.

64. As a direct and proximate result of Defendants' intentional and tortious interference with Plaintiff's business relationship with Defendant County, Plaintiff has suffered a loss of income and benefits, and emotional distress and mental anxiety, for all of which he should receive both compensatory and punitive damages.

### COUNT IV
### DEFAMATION
**(Defendant Sheriff McGuire, Defendant Commissioner Spraggs, Defendant Fire Chief Andrus & Unknown Defendants)**

65. Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

66. Defendants Sheriff McGuire, Defendant Commissioner Spraggs, Defendant Fire Chief Andrus, and Unknown Defendants have made false and/or defamatory statements about Plaintiff to one or more persons in Marshall County and the surrounding communities, including but not limited to publishing false and defamatory statements to the news media.

67. As a direct and proximate result of the false and/or defamatory statements made by Defendants, Plaintiff has suffered damages to his reputation and emotional distress and mental anxiety, for all of which he should receive both compensatory and punitive damages.

**COUNT V**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/ OUTRAGE**
**(Defendant Sheriff McGuire, Defendant Commissioner Spraggs,**
**Defendant Fire Chief Andrus, & Unknown Defendants)**

68. Plaintiffs herein incorporate by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

69. Defendant Sheriff McGuire, Defendant Commissioner Spraggs, Defendant Fire Chief Andrus, and Unknown Defendants' harassment, discrimination, and retaliatory actions directed against Plaintiff is and continues to be intentional, and rise to the level of gross negligence and/or intentional and/or wanton or reckless behavior. Defendants' conduct is and continues to be so outrageous and intolerable as to offend generally accepted standards of morality and decency. Kroger Co. v. Willgruber, 920 S.W.2d 61.

70. As a direct result of the Defendants' actions as set forth above, Plaintiff has and continues to suffer from severe and irreparable harm and injury, including but not limited to, severe emotional distress and mental anxiety, and loss of good standing in their community, for which punitive damages should be awarded.

## COUNT VI
## RETALIATION – KRS 344
### (Defendant Sheriff McGuire & Defendant Commissioner Spraggs)

71. Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

72. Once Plaintiff complained of the illegal hostile work environment regarding both disability discrimination and his report of sexual harassment, Defendant Sheriff McGuire and Defendant Commissioner Spraggs took numerous retaliatory acts against Plaintiff.

73. As a direct and proximate result of Defendant's conduct herein, Plaintiff has suffered a loss of income and benefits, severe emotional distress and mental anxiety, all for which he should be compensated.

## COUNT VII
## INVASION OF PRIVACY – FALSE LIGHT
### (Defendant Sheriff McGuire, Defendant Commissioner Spraggs Defendant Fire Chief Andrus, & Unknown Defendants)

74. Plaintiff herein incorporates by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

75. Defendant Sheriff McGuire, Defendant Commissioner Spraggs, Defendant Fire Chief Andrus, and Unknown Defendants unreasonably, knowingly, and recklessly published false and misleading statements to the media and community at-large about Plaintiff that portrayed Plaintiff in a false light.

76. The false light in which Defendants placed Plaintiff would be highly offensive to a reasonable person.   All actions by Defendants rise to the level of gross negligence and/or intentional and/or wanton or reckless behavior.

77. As a direct and proximate result of Defendants' conduct herein, Plaintiff has suffered a loss of income and benefits, severe emotional distress and mental anxiety, all for which she should be compensated.

**COUNT VIII**
**VIOLATION OF 42 U.S.C. § 1983**
**Fourteenth Amendment**
**(Defendant Sheriff McGuire, Defendant Commissioner Spraggs,**
**Defendant Fire Chief Andrus & Unknown Defendants)**

78. Plaintiff herein incorporate by reference all allegations previously set forth in this Complaint, the same as if set forth verbatim herein.

79. Plaintiff had a right, through the Fourteenth Amendment to the United States Constitution, to the equal protection of the law.

80. Plaintiff, through his disability, was a member of a protected class.

81. As set out in the facts above, Defendants, individually and in their official capacities, acting under color of law and with reckless disregard for Plaintiff's mental well-being, deprived Plaintiff of his Constitutional rights when they denied Plaintiff his right to the Equal Protection of Law.

82. As a direct and proximate result of Defendants' conduct described herein, Plaintiff has suffered significant damages, including but not necessarily limited to severe emotional distress, for all of which he should receive both compensatory and punitive damages.

**WHEREFORE,** the Plaintiff, Christopher Freeman, demands judgment against the Defendants as follows:

    A.    For all compensatory, emotional distress, and punitive damages with respect to statutory and common law claims in an amount being just;

    B.    For an award of reasonable costs and attorney fees; and

    C.      For any and all other equitable and legal relief to which Plaintiff appears entitled.

                Respectfully submitted,

                s/ Dominic A. Capano
                Dominic A. Capano (KBA #98724)
                Barbara D. Bonar (KBA #42213)
                Jack S. Gatlin (KBA #88899)
                GATLIN VOELKER, PLLC
                50 E. Rivercenter Blvd., Ste. #1275
                Covington, Kentucky 41011
                (859) 781-9100
                dcapano@gatlinvoelker.com
                bbonar@gatlinvoelker.com
                jgatlin@gatlinvoelker.com

## JURY DEMAND

Plaintiff herein demands a trial by jury.

                /s/ Dominic A. Capano
                Dominic A. Capano